# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  '20 MJ4565
Information Associated with )
a user account that is stored at premises )
controlled by Spireon Inc. )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the      Northern      District of      Tennessee      , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import a controlled substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Alexander Askey
*Applicant's signature*

Alexander Askey, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone     *(specify reliable electronic means)*.

Date: October 20, 2020

*Allison H. Goddard*
*Judge's signature*

City and state: San Diego, California     Hon. Allison H. Goddard, United States Magistrate Judge
*Printed name and title*

ATTACHMENT A

This warrant applies to records and information associated with the Global Positioning System (GPS) tracker with the following assigned Mobile Equipment Identifier ("MEID") number and Federal Communications Commission Identification ("FCC ID") number:
>    **MEID** # A100004383FF91
>    **FCC ID** #  R5Q-LISAC200A
>    ("**SUBJECT ACCOUNT**")

stored at premises controlled by Spireon Inc., headquartered at 9724 Kingston Pike, Suite 800, Knoxville, TN 37922.

## ATTACHMENT B

**I.   Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **SUBJECT ACCOUNT** listed in Attachment A for the time period of April 19, 2020 up to and including July 23, 2020:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with the use of the tracking device or access to the provider's online services;

        iv. Length of service (including start date) and types of service utilized;

        v. All vehicle tracker Global Positioning System records in Latitude and Longitude format or any other format used to denote location of the tracking device;

      vi. All vehicle tracker diagnostics to include but not limited to speed and idle time;

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **SUBJECT ACCOUNT**, including:

      i. the date and time of the tracking device's use, the method of the use, and the source and destination of the use (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the SUBJECT ACCOUNT communicated tracker data.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 952, 960, and 963 during the period of April 19, 2020 up to and including July 23, 2020.

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Alexander R. Askey, being duly sworn, state as follows:

1. This affidavit is in support of an application by the United States of America for a search warrant for Spireon Inc., headquartered at 9724 Kingston Pike, Suite 800, Knoxville, TN 37922, as described in Attachment A, to search the account associated with the following Mobile Equipment Identifier ("MEID") number and Federal Communications Commission Identification ("FCC ID")

**MEID #** A100004383FF91
**FCC ID #** R5Q-LISAC200A
**("SUBJECT ACCOUNT")**

for subscriber information and global positioning system location data from April 19, 2020, to July 23, 2020. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code Sections 952, 960, and 963, as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, Spireon provides electronic communication services in the form of Global Positioning System (GPS) services for the **SUBJECT ACCOUNT**. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

## EXPERIENCE & TRAINING

2. I am a Special Agent with Homeland Security Investigations (HSI). I have been employed as a special agent since October 2, 2016, and am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7). Prior to becoming a Special Agent, I served as a Police Officer with the City of Alexandria, Virginia, from December 2011 to August 2016. I earned a Bachelor of Arts degree in Administration of Justice and a Minor in Legal Studies from the University of Pittsburgh in 2011. Additionally, I earned a Master of Public

Administration degree from Troy University in 2015. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, Title 19 and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border. I have completed and graduated from the twelve-week Criminal Investigator Training Program as well as the fifteen-week Homeland Security Investigations Special Agent Training Program located at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed and graduated the Northern Virginia Criminal Justice Training Academy, located in Ashburn, Virginia. Since July of 2017, I have been assigned to a HSI Contraband Smuggling Group in San Ysidro, California. My duties include investigating the illicit trafficking of controlled substances into the United States. During my assignment to the Contraband Smuggling Group, I have participated in the investigation of drug trafficking organizations involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California.

3. I am aware that a common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in vehicles, I am aware that narcotics traffickers in Mexico frequently utilize multiple vehicles to transport narcotics from their origination in Mexico to their final destination in the United States. Oftentimes, the narcotics traffickers transport the narcotics to a location near the U.S. Mexico border in Mexico, and then transfer the narcotics into a vehicle for crossing into the United States. Once inside the United States these vehicles can sometimes stop just over the border to transfer the narcotics to another vehicle, or they can drive further into the interior of the United States prior to unloading the narcotics. Narcotics traffickers will use the same vehicle and driver on multiple

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-2-

occasions if they are successful in crossing the narcotics on the first occasion.

4. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that vehicle GPS tracking devices receive microwave signals emitted by satellites in earth's orbit as part of the Global Navigation Satellite System network. The tracking device is able to determine its location based on the signals it receives from the Satellites. Since the device is tied directly into the vehicle, it is able to gather information about a vehicle's speed, location, idle time, and additional diagnostics. The tracker then transmits all the data using a telephone number through wireless or cellular networks back to the computer servers maintained by the company servicing the tracker. The tracking device location can be determined anywhere on earth and reflects its location utilizing latitude and longitude measurements. Depending upon the number of satellites that connect to the device and the design of a particular tracker, the location can be accurately determine to within meters. The companies that provide GPS tracker services maintain accounts for individuals utilizing the trackers. They maintain account information that can include the account holder's name, address, email, and phone numbers. The accounts can also maintain the location data for trackers during the tracker's period of activation. The customers using the devices are then able to access the location data utilizing applications on their computer, cellphone, or other mobile device. Searches of tracker accounts associated with the importation of narcotics may yield evidence:

 a.   tending to indicate patterns of controlled substance importation from Mexico into the United States to include locations, dates, and times;

 b.   tending to identify the location of narcotics stash houses in both Mexico and the United States.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-3-

  c. tending to identify the location where narcotics are loaded into vehicles In Mexico as well as locations where the narcotics are unloaded once the importation of narcotics from Mexico into the United States is complete;

  d. tending to identify the user of, or persons with control over or access to, the vehicle used for importation of controlled substances; and/or

  e. tending to identify the routes taken to successfully cross narcotics and further transport them into the interior of the United States.

5. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

6. On July 23, 2020, at approximately 8:52 PM, Edgar Rodrigo NAVARRO CHAVEZ ("NAVARRO CHAVEZ"), a legal permanent resident, applied for entry into the United States from Mexico through the Otay Mesa, California Port of Entry in vehicle lane #6. NAVARRO CHAVEZ was the driver, sole occupant, and registered owner of a 2012 Volkswagen CC ("the vehicle") bearing California license plates. A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from NAVARRO CHAVEZ. The CBPO noted a computer-generated alert on the vehicle and referred NAVARRO CHAVEZ and the vehicle to secondary inspection. A CBPO

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT
-4-

operating the Z-Portal X-Ray machine detected anomalies in the spare tire of the vehicle. Further inspection of the vehicle resulted in the discovery of 19 packages concealed in a spare tire located inside the trunk of the vehicle. Sixteen of the packages contained a substance that field tested positive for the characteristics of methamphetamine, with a total approximate weight of 9.3 kgs (20.50 lbs); and 3 of the packages contained a substance that field tested positive for the characteristics of heroin, with a total approximate weight of 1.66 kgs (3.65 lbs).

7. NAVARRO CHAVEZ was placed under arrest at approximately 10:35 PM, and charged with a violation of Title 21, United States Code Sections 952 and 960, importation of a controlled substance.

8. Review of TECS records show that NAVARRO CHAVEZ's vehicle crossed into Mexico on July 9, 2020 and did not cross back into the United States until the date of his apprehension on July 23, 2020. The TECS records also show the vehicle crossed the U.S. Mexico border on July 8, 2020 and throughout the months of April, May, and June 2020. The first time NAVARRO CHAVEZ crossed the vehicle into the United States from Mexico was on April 19, 2020. A registration receipt found in the vehicle shows NAVARRO CHAVEZ registered the vehicle on March 20, 2020.

9. On September 3, 2020, HSI Special Agents interviewed NAVARRO CHAVEZ's mother who stated that her son had taken the vehicle to Mexico on July 9, 2020 for repairs at a mechanic's shop.

10. On September 3, 2020, during a vehicle viewing, I seized a global positioning system (GPS) tracking device from inside the vehicle. I was able to determine that a company known as Position Plus marketed the GPS tracker built by Spireon, Inc., a vehicle GPS-tracking device provider headquartered in Knoxville, Tennessee. On October 1, 2020, I spoke with personnel at Spireon and learned that the company keeps historical location data for their GPS tracking devices, and confirmed that the device listed in this warrant

AFFIDAVIT IN SUPPORT OF APPLICATION   -5-
FOR SEARCH WARRANT

was one in which Spireon maintained tracking data, the **SUBJECT ACCOUNT**.

11. Based on my training and experience, and my consultation with other law enforcement officers as well as personnel at Spireon, I am aware that Spireon routinely collects and stores data for the electronic communication accounts to which it and other providers issue GPS tracking devices. Spireon maintains records of the device location so that they can track vehicles for car dealerships, shipping companies, and numerous other companies involved in the movement of vehicles and goods. They have maintained data for the **SUBJECT ACCOUNT** that includes: (i) subscribers' contact and billing information and (ii) detailed information concerning the subscriber's tracker location based on GPS tracking signals associated with the individual tracking device. Spireon automatically records and retains the latitude and longitude data and vehicle diagnostics as part of the **SUBJECT ACCOUNT**.

12. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that vehicle location data, as well as subscriber information for the tracking device is stored in the **SUBJECT ACCOUNT**. In light of the above facts and my experience and training, there is probable cause to believe that the **SUBJECT ACCOUNT** contains information associated with the movement of NAVARRO CHAVEZ while in Mexico and within the United States after crossing the vehicle. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. They may use the same driver on multiple occasions, and they may have the driver travel back and forth across the border to develop a normal crossing pattern. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be

involved for weeks and months longer than they claim. Accordingly, I request permission to search the **SUBJECT ACCOUNT** for data beginning on April 19, 2020 up to and including July 23, 2020.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

13.   I submitted an administrative subpoena on October 8, 2020 to Spireon for records pertaining to who purchased the GPS tracker removed for NAVARRO CHAVEZ's vehicle.  The United States is unaware at this time of any other attempts to obtain the requested data by other means.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

-7-

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

## CONCLUSION

14. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

15. Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics importation investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **SUBJECT ACCOUNT** to be seized, as set forth above and in Section I of Attachment B, will be found in the location described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent, to order Spireon to search its corporate records for the **SUBJECT ACCOUNT** and to order Spireon to deliver the **SUBJECT ACCOUNT** data listed in Section I of Attachment B.

*Alexander R Askey 10-19-20*
_____
Alexander R. Askey
Special Agent
Homeland Security Investigations

Sworn and attested under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this __20th__ day of October 2020.

*Allison H. Goddard*
_____
Honorable Allison H. Goddard
UNITED STATES MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-8-